UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                        Plaintiff,

                                                  DECISION AND ORDER

                                                  09-CR-6046L

              v.

LUTHER DIXON,

                        Defendant.
_____

## INTRODUCTION

On August 11, 2011, defendant, Luther Dixon ("Dixon"), was convicted after a jury trial of possession with intent to distribute cocaine base, and cocaine. Dixon was remanded after the verdict and sentencing is now pending. After the verdict, Dixon filed a motion for a new trial under Rule 33 (Dkt. # 101), which the Government opposes (Dkt. # 105).

In sum, Dixon contends that the Court erred when it instructed the jury concerning the immunized nature of testimony by witness Maranda Triplett, and her prior drug and alcohol use. Defendant also claims entitlement to a new trial because the Court excluded evidence of prior statements by Triplett, and permitted the Government to make certain statements during Triplett's cross-examination and in summation. For the following reasons, Dixon's motion for a new trial is denied.

## DISCUSSION

Pursuant to the Second Circuit's well-settled precedent, motions for a new trial are generally disfavored. *See, e.g., United States v. Wong*, 78 F.3d 73, 79 (2d Cir. 1996); *United States v. Eldridge*, 2011 U.S. Dist. LEXIS 89930 at *16 (W.D.N.Y. 2011). "The 'ultimate test' [in assessing

a 33 motion] is 'whether letting a guilty verdict stand would be a manifest injustice. . . . There must be a real concern that an innocent person may have been convicted.'" *United States v. Canova*, 412 F.3d 331, 349 (2d Cir. 2005), *quoting United States v. Ferguson*, 246 F.3d 129, 133 (2d Cir. 2001). District Courts are given "broad discretion" in considering whether to grant a Rule 33 motion for a new trial. *Canova*, 412 F.3d 331 at 348; *United States v. Gambino*, 59 F.3d 353, 364 (2d Cir. 1995). I find no manifest injustice and no basis to grant a new trial.

**A.     Jury Instructions**

Dixon first argues that the Court erred in advising the jury that it should view Triplett's testimony cautiously -- first, due to the fact that she had been granted Fifth Amendment immunity by the Government, and later, due to the fact that Triplett had testified she was regularly using drugs and alcohol at the time of the events about which she testified, and was intoxicated when she made the phone call to police that precipitated the defendant's arrest.

A new trial is warranted where a defendant demonstrates that a jury charge was given in error, and that such error resulted in prejudice. *See United States v. Quinones*, 511 F.3d 289, 313 (2d Cir. 2007).

In my view, the charges given were warranted. Both contained plain, standard language from pattern jury instructions, with no substantive changes. *See* O'Malley et al., Federal Jury Practice and Instructions §15.03; Sand et al., Modern Federal Jury Instructions, Instr. 7-9.1. Neither instruction misstated the law.

Although the instruction concerning the caution to be afforded a witness with immunity was presented in an atypical context, in that the immunized witness was testifying on behalf of the defendant rather than the Government, the charge is warranted. The witness's incentive to testify untruthfully -- and here, her freedom to publicly "take the fall" for the crimes of which defendant was accused, falsely or otherwise, without fear that her testimony would be used against her, was equally present, regardless of which party elicited her testimony. Plainly, a witness with immunity

is in a different posture from a witness without such protection. Although defendant argues that it is the relationship between the immunized witness and the Government that demands special caution by the jury, there is no authority which suggests that the immunization of testimony, alone, does not provide sufficient incentive for untruthfulness to trigger cautious evaluation of the testimony.

With respect to the defendant's objection to the instruction concerning Triplett's drug use, Triplett testified to periodic, ongoing use of alcohol, cocaine and marijuana, and to the purchase of a significant amount of cocaine, during the period in question, and testified that one of her most significant actions -- her telephone "tip" to police which ultimately led to defendant's arrest -- was performed while she was intoxicated. Under these circumstances, it was proper for the Court to charge the jury concerning the witnesses' use of controlled substances. (Dkt. #98 at 44-45, 56, 88, 90).

### B. Admissibility of Witness's Prior Out-of-Court Statements

The defendant also contends that the Court should have admitted evidence of certain statements Triplett made to her sister, Dixon's mother, and Dixon's aunt, as well as a letter written to an investigator, allegedly expressing remorse and/or accepting responsibility for framing the defendant. Because Ms. Triplett herself had testified as to these events and these prior statements in detail, the statements were cumulative. The statements of remorse were also not admissible to show Triplett's state of mind under Fed. R. Evid. 803(3) because, as the Court found, the vague statements did not identify the reason for Triplett's expressed remorse, and thus lacked probative value or demonstrable relevance to the issue of whether Triplett had tipped off authorities to criminal activity by the defendant and later opted to "take the fall" for him, or had actively framed him. (Dkt. #107 at 14-15). Moreover, although defendant argued that the prior statements were admissible to rebut Government allegations that Triplett's version of events was a "recent fabrication," the Court ruled that they were not admissible for that purpose, because they had not been made prior to the

time Triplett's motive to lie arose. *See e.g.*, *Tome v. United States*, 513 U.S. 150 (1995). I see no reason to disturb those rulings.

Defendant also objects to the exclusion of a statement by Triplett that was reported in an investigative report by Special Agent Patrick Hoffmann. As the Court noted when the issue was raised, while the report is a public record and report under Fed. R. Evid. 803(8)(c), "[w]hether [or not] the investigation report[ is a] public or business record[] . . . the report[] remain[s] inadmissible because [the investigator's] recording of what [a witness] said constitutes multiple hearsay" and Triplett's statements were not independently admissible under any other exception to the hearsay rule. *United States v. Cruz*, 894 F.2d 41, 44 (2d Cir. 1990). Accordingly, the exclusion of Triplett's previous out-of-court statements was proper.

### C. Government's Suggestion That Triplett Was Untruthful

The defense contends that a new trial is warranted because the prosecutor questioned Triplett as to whether she had previously lied to the police and her best friend and suggested in closing argument that her testimony was not to be believed at trial. Although comments that could be interpreted as characterizing a witness as a "liar" were perhaps better left unsaid, it is clear that the use of such terms by a prosecutor does not, by itself, merit a new trial. As with any arguments by a prosecutor, in determining whether such terms were improper and prejudicial, the Court is required to examine the statements in the context of the trial and the summation as a whole, and consider whether they were responsive to arguments made by defense counsel. *See United States v. Resto,* 824 F.2d 210, 212 (2d Cir. 1987).

Defendant objects to the Government's having questioned Triplett as to whether certain statements, to police and to her best friend, constituted a "lie,", and having argued in its summation that Triplett "is simply not telling the truth when she takes the stand." (Dkt. #99 at 12).

I find nothing warranting a new trial based on the Government's questioning of Triplett about her story and whether she had fabricated certain matters. The prosecutor questioned Triplett as to

whether she had falsely told the police in her 911 call that defendant had a gun and whether she lied to her best friend concerning the money received from the friend, allegedly to pay rent. The witness admitted the false statements. The evidence, therefore, supports some reference to the witness being a liar since she had admitted as much. To be sure, Triplett was a crucial witness and she attempted, in the Government's view falsely, to take the blame for the drugs found in defendant's vehicle. The cross-examination at issue, however, was not of the defendant, who elected not to testify in this case. In my view, it is more difficult to find prejudicial cross-examination and argument relating to a witness as opposed to the defendant himself.

The Government's comments with respect to Triplett's veracity were not improper, both in the context of the summation and in the larger context of the trial. Triplett's testimony was part and parcel of the defendant's defense to some damaging inculpatory evidence, and its success or failure depended almost exclusively upon whether the jury found Triplett to be truthful or untruthful. Indeed, defense counsel twice urged the jury during his own summation to find Triplett credible, by asking whether she "could have made all of [her testimony] up." (Dkt. #106 at 9).

The Government's statements regarding Triplett's truthfulness or lack thereof were not an *ad hominem* attack on a witness, an instance of inflammatory name-calling or an attempt to testify directly about her credibility: in each instance, the Government was suggesting or arguing that an inference of untruthfulness should be drawn from testimony and other evidence that conflicted with what Triplett had said, or from Triplett's own testimony that she had "lied" on prior occasions about matters relating to the case. As the Court noted in responding to defendant's objection during summation, "[the Government is] giving an argument based upon what the evidence shows [and not simply its opinion]." (Dkt. #99 at 12).

There is no evidence that the Government's cross examination or summation caused substantial prejudice to the defendant, or otherwise misled, influenced or inflamed the jury. Again, each time such terms were used, the Government was in the process of eliciting or summarizing evidence relating to Triplett's credibility, for the purpose of arguing that the evidence demonstrated

that Triplett had made false statements on at least two occasions in the past, and that her trial testimony was similarly and demonstrably not credible. Furthermore, the jury was instructed by the Court at length that the comments made by counsel during summation are not evidence but merely argument, and that determinations of credibility and the drawing of inferences from the evidence were the jury's province alone. (Dkt. #99 at 28-29, 39, 41-43).

The defendant also objects to several statements in the Government's summation, which defendant believes overstated the evidence, or omitted defendant-friendly evidence. However, counsel are entitled to wide latitude during closing arguments, and the disputed statements appear to derive from reasonable inferences, based on the evidence adduced at trial. *See generally United States v. Dibrizzi*, 393 F.2d 642, 646 (2d Cir. 1968). As such, I find that the Government's statements were neither excessive nor inflammatory, and that there is no evidence that they prejudiced the defendant.

## CONCLUSION

Based on the evidence before me, I find no basis to grant a new trial. Defendant Luther Dixon's motion for a new trial (Dkt. # 101) is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
October 12, 2011.